IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| JULES ORME,<br><br>   Plaintiff,<br><br>v.<br><br>DXC TECHNOLOGY SERVICES, LLC,<br><br>   Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff JULES ORME brings this Complaint for damages and other relief against Defendant DXC TECHNOLOGY SERVICES, LLC and alleges as follows.

### NATURE OF THE ACTION

1. This is an action for discrimination in violation of the Americans with Disabilities Act as Amended ("ADAAA"), 42 U.S.C. § 12101 *et. seq.*, discrimination under the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff, *et. seq.*, for discrimination under Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e, and for violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d).

1

## PARTIES

2. Plaintiff Jules Orme ("Orme") is a citizen of Georgia and resides in Senoia, Georgia.

3. Defendant DXC Technology Services, LLC ("DXC") is a Delaware corporation.

4. DXC's principle office is located at 1775 Tysons Boulevard, Tysons, Virginia 22102.

5. DXC may be served with process by delivering copies of the Summons and this Complaint to DXC's registered agent, C T Corporation System, located at 289 Culver Street, Lawrenceville, Georgia 30046.

## JURISDICTION

6. The Court has original jurisdiction over Plaintiff's claims for discrimination under the ADAAA, GINA, Title VII, and violation of the EPA pursuant to 28 U.S.C. § 1331, because these claims raise questions of federal law.

7. The Court has personal jurisdiction over DXC, because DXC is licensed to do business in Georgia and because it does in fact do business in Georgia.

## VENUE

8.  Under 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Northern District of Georgia.

9.  Pursuant to Local Rule 3.1(B)(3) and § 1391(d), venue is proper in the Newnan Division, because the activity from which the cause of action arose took place in Coweta County.

## ADMINISTRATIVE PROCEEDINGS

10. Plaintiff timely filed a Charge of Discrimination for disability discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 16, 2018.

11. On August 7, 2018, the EEOC issued a Notice of Right to Sue in reference to Plaintiff's Charge.

12. Plaintiff filed this Complaint within 90 days of receiving the Notice of Right to Sue.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIMS

13. DXC is an international technology company.

14. DXC is a covered entity under the ADAAA.

15. DXC is a covered entity under GINA.

16. DXC is a covered entity under Title VII.

17. DXC is a covered entity under the EPA.

18. DXC is engaged in interstate commerce because it operates a technology company throughout the United States.

19. DXC regularly purchases and uses computers that are transported in interstate commerce prior to their arrival at DXC's offices.

20. DXC regularly purchases office supplies that are transported in interstate commerce prior to their arrival at DXC's offices.

21. DXC has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or proceeding calendar year.

22. On or about January 2, 2001, Orme began working for Hewlett Packard.

23. Hewlett Packard now operates under the name DXC Technology Services, LLC.

24. From approximately October of 2013 to March of 2016, Orme served as a Director of Operations.

25. As a Director of Operations, Orme was the leader of Strategy and Operations for Application Services and Industry.

26. In this role, Orme was responsible for multiple global practices and approximately 1200 employees.

27. In or about March of 2016, Orme was promoted to Vice President of Strategy & Operations.

28. As Vice President of Strategy & Operations, Orme performed top-level predictive analytics and business intelligence for approximately ten global services organizations and oversaw approximately 6,000 employees.

29. During her tenure as a Director of Operations and as Vice President Strategy & Operations, Orme was based in the Atlanta, Georgia area.

30. In serving as a Director of Operations and as Vice President Strategy & Operations, Orme typically worked long hours on behalf of DXC.

31. In approximately April of 2017, Orme was diagnosed with cervical cancer.

32. Orme is a disabled individual under the terms of the ADAAA.

33. Cancer is a disability under the ADAAA.

34. Orme's cancer substantially limited a major life activity.

35. For example, Orme's cervical cancer limited her ability to exercise and walk long distances.

36. Although Orme had cancer, she was still able to perform the essential functions of the employment position that she held at DXC.

37. On or about May 4, 2017, Ms. Orme went to Texas to meet with her supervisor, Sunil Pandita.

38. In meeting with Pandita, Orme informed Pandita that Orme was diagnosed with cancer.

39. After hearing of Orme's cancer diagnosis, Pandita informed Orme that she should get her resume updated.

40. Panditia's comment to Orme regarding the need to update her resume was meant to tell Orme that she needed to look for a new job.

41. On or about June 2, 2017, Orme overheard Pandita and two other individuals, Katie Ebrahimi and Catherine Halberson, discussing Orme's cancer and the need to terminate her employment.

42. On or about June 2, 2017, Orme reached out to her Human Resources representative to request short-term disability.

43. Orme then went out on leave and had surgery to remove her cancer cells, on or about June 27, 2017.

44. After her surgery, Orme was cleared by her physician to return to work.

45. On or about July 20, 2017, Ms. Orme returned to work.

46. Orme was terminated on July 21, 2017, the day after she returned to work from leave to have surgery.

47. Orme was terminated because of her disability, her history of disability, and/or her perceived disability.

48. In the alternative, Orme was terminated because the employer knew of her history of cancer, thus violating GINA.

49. DXC's termination of Orme constitutes unlawful discrimination in violation of the ADAAA.

50. DXC's termination of Orme constitutes unlawful discrimination in violation of GINA.

51. Orme's cancer contained genetic markers.

52. Certain individuals with cancer are genetically predisposed to be more likely to develop cancer.

53. Because Orme was diagnosed with cancer, DXC believed she would be predisposed to develop cancer in the future.

54. While employed with DXC, Orme was paid less than her male counterparts, solely because of her sex and/or gender.

55. While serving in the role of Director of Operations, Orme was paid less than her male counterparts also serving in that role.

56. Orme performed the same or similar work as her male Directors of Operations counterparts.

57. Orme's experience, education, and tenure were similar to those of her male Directors of Operations counterparts.

58. William Martin served as a Director of Operations during Orme's tenure as a Director of Operations.

59. As a Director of Operations, Martin oversaw the operational activities for a single global practice and approximately 600 employees.

60. Martin is a male.

61. Orme possessed the similar job skills and qualifications as Martin.

62. Martin's role of Director of Operations required substantially equal skill to perform as Orme's role of Director of Operations.

63. Martin was compensated $50,000 more per year in base salary than Orme.

64. Ed Rice served as a Director of Operations during Orme's tenure as a Director of Operations.

65. Rice is a male.

66. As a Director of Operations, Rice oversaw the operational activities for a single global practice and approximately 600 employees.

67. Orme possessed the similar job skills and qualifications as Rice.

68. Rice's role of Director of Operations required substantially equal skill to perform as Orme's role of Director of Operations.

69. Rice was compensated $86,000 more per year in base salary than Orme.

70.    Additionally, the male who held the Vice President of Operations position prior to Orme, was compensated at approximately $350,000 per year, with a potential 40-50% bonus of the salary.

71.    In that same position, Orme was compensated at $200,000 per year, with a potential $80,000 bonus.

72.    Orme possessed the similar job skills and qualifications as the male who held the position of Vice President of Operations directly prior to her holding it.

73.    Orme made complaints to her employer that she was being compensated at a lower rate due to her sex and/or gender.

74.    In or around November of 2015, Orme complained to Joe Paulson about her unequal pay.

75.    Paulson was Orme's supervisor at the time.

76.    Paulson acknowledge the pay discrepancy and told Orme he would work on fixing the problem.

77.    On or about December 7, 2015, the Human Resource Department acknowledged Orme's complaints of pay inequity.

78.    In February of 2016, Orme complained in writing to the Employee Relation's Department of her unequal pay.

79. Orme made additional complaints about her unequal pay to DXC in or about May of 2016.

80. Despite complaints of unequal pay, Orme's was still compensated at a lower rate than her male counterparts.

81. DXC's unequal pay to Orme constitutes unlawful discrimination in violation of Title VII.

82. As a result of DXC's unlawful discrimination, Orme has suffered harm, including emotional distress, mental anguish and monetary damages.

83. DXC's unequal pay to Orme constitutes a violation of the EPA

## COUNT 1: VIOLATION OF THE ADAAA

84. DXC was Orme's employer as that term is defined under the ADAAA.

85. Orme was disabled.

86. Orme had a record of disability.

87. DXC regarded Orme as disabled.

88. DXC terminated Orme's employment because of her disability, her record of being disabled, and/or because Orme regarded her as disabled.

89. DXC terminated Orme because she was absent from work in order to treat her cancer.

90. DXC failed to make reasonable accommodations for Orme's disability when it terminated her for taking a short absence due to her cancer.

91. DXC knew that Orme was disabled and that it was failing to make a reasonable accommodation for Orme as required under the ADAAA, and it willfully and maliciously violated the law.

92. As a result of DXC's unlawful discrimination in violation of the ADAAA, Orme has suffered emotional distress and monetary damages.

93. Therefore, Orme is entitled to economic, compensatory and punitive damages for DXC's willful violation of the ADAAA, and her attorneys' fees and costs.

## COUNT 2: VIOLATION OF GINA

94. Alternatively, DXC terminated Orme because of her genetic information.

95. DXC was Orme's employer as that term is defined under GINA.

96. Cancer has genetic markers.

97. DXC believed that Orme's treatment of cancer meant she was genetically predisposed to have cancer again in the future.

98. Upon learning Orme had certain genetic information, DXC terminated Orme.

99. DXC terminated Orme because of her genetic information.

100. In terminating Orme because of her genetic information, DXC willfully and maliciously violated the law.

101. As a result of Defendant's unlawful discrimination in violation of GINA, Orme has suffered emotional distress and monetary damages.

102. Therefore, Orme is entitled to economic, compensatory and punitive damages for DXC's willful violation of GINA, and her attorneys' fees and costs.

### COUNT 3: VIOLATION OF THE TITLE VII

103. DXC was Orme's employer as defined under Title VII.

104. While employed by DXC, Orme was subjected to discrimination on the basis of her gender, female, in violation of Title VII.

105. At all times relevant to this action, Orme was performing work equal to that of her male counterparts.

106. Nonetheless DXC compensated Orme up to $150,000 less in base pay per year for her work, as well as less in bonuses.

107. It is a violation of Title VII to pay a woman less than a man to perform the same or substantially similar job.

108. DXC's violations of the Title VII were knowing, willful, and intentional.

109. At the time of the discriminatory pay complained of in this Complaint, DXC knew or should have known that its actions constituted violations of Title VII.

110. At a minimum, DXC's actions in paying Orme less than male Directors of Operations and Vice Presidents was reckless.

111. As a direct and proximate result of DXC's actions, Orme has been denied equal pay as that given to male employees of equal rank.

112. Therefore, Orme is entitled to economic, compensatory and punitive damages for DXC's willful violation of Title VII, and her attorneys' fees and costs.

## COUNT 4: VIOLATION OF THE EPA

113. DXC employed Orme, as that term is defined under the EPA, 29 U.S.C. § 203(d).

114. DXC is subject to this private action pursuant to 29 U.S.C. 216(d).

115. At all times relevant to this action, Orme was performing work equal to that of her male counterparts.

116. Nonetheless, DXC compensated Orme up to $150,000 less in base pay per year for her work, as well as less in bonuses.

117. It is a violation of the EPA to pay a woman less than a man to perform the same or substantially similar job.

118. DXC's violations of the EPA were knowing, willful, and intentional.

119. At the time of the discriminatory pay complained of in this Complaint, DXC knew or should have known that its actions constituted violations of the EPAt.

120. At a minimum, DXC's actions in paying Orme less than male Directors and Vice Presidents was reckless.

121. As a direct and proximate result of DXC's actions, Orme has been denied equal pay as that given to male employees of equal rank.

122. Therefore, Orme is entitled to back pay and liquidated damages for DXC's willful violation of the EPA, and her attorneys' fees and costs.

## DEMAND FOR JUDGMENT

Based on the allegations set forth in this Complaint, and the evidence as it is developed in this case, Plaintiff respectfully requests:

(a) A declaratory judgment against Defendant stating that it violated the ADAAA, GINA, Title VII, and the EPA;

(b) A declaration that Defendant's violation of the ADAAA, GINA, Title VII, and the EPA were willful;

(c) A monetary judgment against the Defendant, including:

    i) Back pay,

    ii) Front Pay,

    iii) Compensatory damages,

    iv) Punitive damages,

    v) Liquidated damages,

    vi) Reasonable costs and attorney fees, and

    vii) Prejudgment interest;

(d)   Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff demands a jury trial on all issues triable by a jury.

Respectfully submitted: November 5, 2018.

| | |
|---|---|
| POOLE HUFFMAN, LLC<br>3562 Habersham at Northlake<br>Building J \| Suite 200<br>Tucker, Georgia 30084<br>T: (404) 373-4008<br>william@poolehuffman.com<br>tim@poolehuffman.com | /s/ William S. Cleveland<br>William S. Cleveland<br>Georgia Bar No. 721593<br>Tim J. Guilmett<br>Georgia Bar No. 624309<br><br>Counsel for the Plaintiff |